**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI,**
**WESTERN DIVISION**

MARK BURTON                                                    PLAINTIFF

VERSUS                              CIVIL ACTION NO. 5:06cv12-DCB-JMR

CONTINENTAL CASUALTY COMPANY                                   DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the plaintiff's Motion for Partial Summary Judgment **[docket entry no. 51]** and the defendant's Motion for Summary Judgment **[docket entry no. 49]**. Having reviewed the Motions, briefs, applicable statutory and case law, and being otherwise fully advised as to the premises, the Court finds and orders as follows:

## I. FACTS

The parties are in apparent agreement as to the following facts. The plaintiff, Mark Burton, was insured by the defendant, Continental Casualty Company, under a Lawyer's Professional Liability Policy. (Def.'s Mot. Summ. J. Ex. 14-30 ["Policy"].) Application for the Policy was made through Burton's wife and legal partner, Elizabeth Burton,[1] on November 30, 2001. As part of the application process, the date of November 26, 2001, was chosen by Elizabeth Burton as both the effective date of the Policy and the prior acts exclusion date.

---

[1] Elizabeth Burton is not a party to this action.

Continental subsequently accepted the application and issued the Policy to Burton and his law firm with an effective date of November 26, 2001.  A prior acts exclusion date of November 26, 2001, was included in the Policy terms.  (Pl.'s Mot. Part. Summ. J. ¶ 2; Def.'s Mot. Summ. J. ¶ 3.)  The Policy was renewed effective November 26, 2002, with the same prior acts exclusion date of November 26, 2001.  The expiration date of the renewed Policy was established as November 26, 2003.  (Def.'s Mot. Summ. J. Ex. J 1.)

A complaint was filed against Burton (and others) by former clients Bud and Joyce Williams in the Circuit Court of Jefferson County, Mississippi, on December 27, 2002.  (Def.'s Mot. Summ. J. Ex. D 1 ["Williams Complaint"].)  Burton submitted a claim under the Policy on January 13, 2003.  In his claim letter, Burton requested that Continental "hire an attorney to defend me in this matter and otherwise comply with the contractual obligations outlined [in the Policy]."  (Def.'s Mot. Summ. J. Ex. E 1.)  Burton's claim was denied by Continental on January 30, 2003.

An amended complaint was filed against Burton by the plaintiffs in the Williams action between January 30, 2003, and March 10, 2003.[2]  (Pl.'s Part. Mot. Summ. J. Ex. C 10 ["Amended Complaint".]  Burton then submitted a second claim to Continental

---

[2]    Apparently no filing date was affixed to the amended complaint by the Jefferson County Circuit Clerk.  The Certificate of Service for the amended complaint was signed by counsel for the former clients on February 4, 2003.

on March 10, 2003.  Burton again requested that Continental hire an attorney to defend him.  (Def.'s Mot. Summ. J. Ex. H 2.)  This second claim was denied by Continental in a letter dated March 24, 2003.  (Def.'s Mot. Summ. J. Ex. I 1.)

## II. PROCEDURAL HISTORY

Burton initiated this suit against Continental in the Circuit Court of Jefferson County, Mississippi, on December 19, 2005, alleging multiple legal claims[3] and seeking damages in excess of $75,000.00.  (Compl. 1-13.)  Continental timely removed the action to this Court on the basis of diversity of citizenship jurisdiction.  (Def.'s Not. Remov. 3.)  Discovery having been completed by the parties, Continental moved for summary judgment on June 28, 2007, and Burton cross-filed for partial summary judgment on July 2, 2007.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is apposite "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

---

[3]     In his complaint, Burton asserts claims for breach of contract/tortious breach of contract, breach of duty of good faith and fair dealing, negligence/gross negligence, bad faith, vicarious and joint liability, promissory and/or equitable estoppel, and declaratory relief.  (Compl. 4-12.)

judgment as a matter of law." Fed. R. Civ. P. 56(c).[4]  The party moving for summary judgment bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is inappropriate." Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). But the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Moreover, "[t]he mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 252.  The nonmovant must instead come forward with "specific facts showing that there is a genuine

---

[4]    "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law.  An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Ginsberg 1985 Real Estate Partnership v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (citations omitted).

issue for trial." Fed. R. Civ. P. 56(e).  Summary judgment is properly rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322.

## IV. ISSUE FOR DETERMINATION

In his Partial Motion for Summary Judgment, Burton posits that the allegations of his former clients fall within the ambit of the Policy's coverage and that Continental breached the Policy–derived duty it owed him by refusing to provide a defense in the Williams action.  (Pl.'s Mot. Summ. J. ¶ 12.)  Conversely, the upshot of Continental's Motion for Summary Judgment is that its refusal to defend Burton was not a breach of its obligations because the Policy terms precluded coverage for the acts asserted in the underlying complaints.  (Def.'s Mot. Summ. J. ¶ 12.)  Thus both parties essentially argue that no genuine issue of material fact exists regarding whether Continental had a duty to defend Burton in the Williams action and that both are entitled to judgment as a matter of law on that matter.  (Pl.'s Mot. Summ. J. ¶ 12; Def.'s Mot. Summ. J. ¶ 12.)

Upon a careful, thorough evaluation of the entire record, the Court is of the opinion that there is indeed no genuine issue of material fact in dispute between the parties on the matter now before it.  That being the case, the overarching issue to be

decided by the Court is purely one of law, which may be stated thus:  Pursuant to the terms of the Policy, were any of the facts asserted in the Williams complaints sufficient to give rise to Continental's duty to defend Burton against such allegations?  The resolution of this question will be dispositive of both Motions now before the Court.

## V. APPLICABLE LAW

As is the case here, a federal court sitting in diversity is obligated to apply state substantive law.  Times-Picayune Pub. Corp. v. Zurich Am. Ins. Co., 421 F.3d 328, 334 (5th Cir. 2005) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)).[5]

### A. Mississippi's General Rules of Insurance Policy Interpretation

In Mississippi, "'[i]nsurance policies are contracts, and as such, they are to be enforced according to their provisions . . . .'"  Anglin v. Gulf Guar. Life Ins. Co., 956 So. 2d 853, 859 (Miss. 2007) (quoting Noxubee County Sch. Dist. v. United Nat'l Ins. Co., 883 So. 2d 1159, 1166 (Miss. 2004)).  "Generally, under Mississippi law, when the words of an insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written."  Id.  However, "ambiguous and unclear policy language must be resolved in favor of the non-drafting party -- the insured.  Further, provisions that limit or

---

[5]   The parties do not dispute that the substantive law of Mississippi is applicable to this matter.

exclude coverage are to be construed liberally in favor of the insured and most strongly against the insurer." <u>Id.</u> (citations omitted).

### B. An Insurer's Duty to Defend Under Mississippi Law

The Supreme Court of Mississippi has stated that "an insurance company's duty to defend its insureds derives neither from common law nor statute, but rather from the provisions of its policy, that is, its insurance contract with its insured.  It is a matter of contractual agreement." <u>Baker Donelson Bearman & Caldwell, P.C. v. Muirhead</u>, 920 So. 2d 440, 450 (Miss. 2006).

Once such a responsibility is contractually created, "'[t]he traditional test' for whether an insurer has a duty to defend under the policy language 'is that the obligation of a liability insurer is to be determined by the allegations of the complaint or declaration [in the underlying action].'" <u>Sennett v. United States Fid. & Guar. Co.</u>, 757 So. 2d 206, 212 (Miss. 2000) (quoting <u>Delta Pride Catfish, Inc. v. Home Ins. Co.</u>, 697 So. 2d 400, 403 (Miss. 1997)).  More precisely, a complaint's <u>factual</u> assertions, rather than particular legal theories or formulations, are the preeminent consideration when evaluating whether an insurer's duty to defend has been triggered.  Under what is known as Mississippi's "allegations of the complaint" rule, "if the factual allegations of the complaint bring the action within coverage of the policy, the insurer has a duty to defend." <u>E.E.O.C. v. So. Publ'g Co.</u>, 894

F.2d 785, 790 (5th Cir. 1990) (applying Mississippi law); State Farm Mut. Auto. Ins. Co. v. Taylor, 233 So. 2d 805, 808 (Miss. 1970).   Indeed, when "comparing the complaints with the policy terms, [courts] look not to the particular legal theories pursued by the state complainants, but to the allegedly tortious conduct underlying their suits."   Am. Guar. & Liab. Ins. Co. v. 1906 Co., 273 F.3d 605, 610 (5th Cir. 2001) (applying Mississippi law); Ingalls Shipbuilding v. Fed. Ins. Co., 410 F.3d 214, 225 (5th Cir. 2005) (applying Mississippi law); Lexington Ins. Co. v. Hattiesburg Med. Park. Mgmt. Corp., 2007 WL 2011288, at *3 (S.D. Miss. July 6, 2007); Nationwide Mut. Ins. Co. v. Ellzey, 1996 WL 33370645, at *2 (N.D. Miss. Feb. 28, 1996) ("It is important to note that the facts alleged, and not the legal conclusions of the pleadings, control this determination.").

As a matter of law, "[a]n insurance company's duty to defend its insured is triggered when it becomes aware that a complaint has been filed which contains reasonable, plausible allegations of conduct covered by the policy.   However, no duty to defend arises when the claims fall outside the policy's coverage."   Baker Donelson, 920 So. 2d at 450 (emphasis added).   For those in-between situations where it is unclear whether the factual averments of a complaint against an insured fall within the coverage ambit of an insurance policy and thus whether the insurer's duty to defend is activated, doubts are to be resolved in favor of the insured.

Ingalls Shipbuilding, 410 F.3d at 225-26 (analyzing Mississippi law); 1906 Co., 273 F.3d at 610 (applying Mississippi law and noting that "only if it is clear from the face of the state court complaints that the allegations therein are not covered" is an insurer justified in refusing to defend); Boutwell v. Employer's Liab. Assurance Corp., 175 F.2d 597, 600 (5th Cir. 1949) (applying Mississippi law and stating that the insurer's "obligation was not merely to defend in cases having perfect declarations, but in cases where by any reasonable intendment of the pleadings liability could be inferred"); Lexington Ins. Co., 2007 WL 2011288, at *3; United States Fid. & Guar. Co. v. B&B Oil Well Serv., Inc., 910 F. Supp. 1172, 1175 (S.D. Miss. 1995); Merch. Co. v. Am. Motorists Ins. Co., 794 F. Supp. 611, 616 (S.D. Miss. 1992).

## VI. TERMS OF THE POLICY

The pertinent policy provisions are as follows:

LAWYER'S PROFESSIONAL LIABILITY POLICY

THIS IS A CLAIMS MADE AND REPORTED POLICY.  IT APPLIES ONLY TO THOSE CLAIMS THAT ARE BOTH FIRST MADE AGAINST THE INSURED AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD.  PLEASE REVIEW THIS POLICY CAREFULLY AND DISCUSS THIS COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

I.  INSURING AGREEMENT

    A.  Coverage

    The **Company** agrees to pay on behalf of the **Insured** all sums in excess of the deductible that the **Insured** shall become legally obligated to pay as **damages** and **claim expenses**

-9-

because of a **claim** that is both first made against the **Insured** and reported in writing to the **Company** during the **policy period** by reason of an act or omission in the performance of **legal services** by the **Insured** or by any person for whom the **Insured** is legally liable, provided that:

[RETROACTIVE EXCLUSION CLAUSE ENDORSEMENT]

A(5). the act or omission occurred on or after 11/26/2001.

B.  Defense

The **Company** shall have the right and duty to defend in the **Insured's** name and on the **Insured's** behalf a **claim** covered by this Policy even if any of the allegations of the **claim** are groundless, false or fraudulent. The **Company** shall have the right to appoint counsel and to make such investigation and defense of a **claim** as is deemed necessary by the **Company**.  If a **claim** shall be subject to arbitration or mediation, the **Company** shall be entitled to exercise all of the **Insured's** rights inthe choice of arbitrators or mediators and in the conduct of an arbitration or mediation proceeding.

. . . .

III. DEFINITIONS

Wherever used in this Policy:

. . . .

B.  "**Claim**" means a demand received by the **Insured** for money  or services arising out of an act or omission, including **personal injury**, in the rendering of or failure to render **legal services**.  A demand shall include the service of suit  or the institution of an arbitration proceeding against the **Insured**.

. . . .

H.   **"Legal services"** mean:
1. those services performed by an **Insured** for others as a lawyer, arbitrator, mediator, title agent or as a notary public. Any title agency or company, on whose behalf the **Insured** acts as title agent or designated issuing attorney, is not an **Insured** under this Policy;
2. those services performed by an **Insured** as an administrator, conservator, receiver, executor, guardian, trustee or in any fiduciary capacity and any investment advice given in connection with such services.

(Def.'s Mot. Summ. J. Ex. J 7; Policy 1-2, 5, 7.)

## VII. FACTUAL ALLEGATIONS IN THE UNDERLYING COMPLAINTS[6]

Turning now to the Williams action, the pertinent facts alleged therein include:

13.

That on or about February 6, 2001, the plaintiffs was [sic] informed by the defendant, Mark Ivey Burton of Shaw & Burton, PLLC, with whom they had already entered into a legal contract for representation, was informed [sic] by letter that the law firm of the defendant Cofer and Ogletree would be employed to assist them in their lawsuit against Primerica Life Insurance Company. At sometime subsequent or prior to said date, the defendant, Byrd & Associates was brought in to prosecute the said lawsuit.

14.

---

[6]   The Court has fully considered the averments in both the original and amended complaints in the Williams action. Because there are few substantive differences between the two pleadings (other than ¶ 40 and the last sentence of the final unnumbered paragraph in the amended complaint) relevant to the matter now before the Court, unless otherwise indicated all references made are to the original complaint.

That on or about November 7, 2002, plaintiffs, Bud Williams and Joyce Williams, sent certified letters to defendants Mark Ivey Burton, Christopher W. Cofer and Isaac K. Byrd requesting their case file and all contract agreements between them.

15.

That defendants Mark Ivey Burton, Christopher W. Cofer and Isaac K. Byrd and/or their respective law firms, refused or otherwise failed to honor their said request [sic] as averred in paragraph 14 of this complaint.

. . . .

18.

That the defendant, Isaac K. Byrd, in a letter dated August 27, 2001, informed the plaintiffs that if they did not agree to settle their case, that the respective law firms would unable [sic] to further represent them.

19.

That subsequent to the said August 27, 2001 letter from said defendant, the plaintiffs received from the defendants, a consent to settle agreement from the defendants [sic] for them to sign off on to settle their case.[7]

20.

That subsequent to the said August 27, 2001 letter from said defendant, the plaintiffs received from the defendants, a 'Master General Release and Settlement Agreement', [sic] which indicated for the first time to the plaintiffs that the defendants Byrd & Associates, and Cofer & Ogletree, would collectively receive the separate sum of $2.9 million dollars [sic] from the Prime America Life Insurance Company as a part of the settlement of plaintiff [sic] said lawsuit.

. . . .

23.

Plaintiffs aver that the said $2.9 million dollar [sic] settlement payment just to the attorneys and not on

---

[7]    Exhibit 4 of the original complaint indicates that the plaintiffs signed the consent form on August 29, 2001. (Def.'s Mot. Summ. J. Ex. D 25.)

behalf of the plaintiffs was indeed part of the total
recovery and this said separate payment was a breach of
contract originally entered into by the parties herein.

. . . .

28.

Plaintiffs aver that the terms of this said agreement
evidences that the defendant took unfair advantage of the
plaintiffs when they negotiated it, due to the fact that
they put their (the defendants [sic]) interests above the
plaintiffs.

. . . .

31.

That the averment of paragraph 18 of this complaint
constitutes the tort of intimidation because the threat
or representation unto the plaintiff that they would no
longer represent them unless they agreed to settle was in
violation of Mississippi Statutes Annotated § 73-3-37,
and the defendants are liable unto plaintiffs for such
because the plaintiffs essentially was [sic] forced to
act to their own loss for the benefit of the defendants.

. . . .

33.

That the plaintiffs had not received nor were they
encouraged by the defendants to seek independent legal
advice when entering the said settlement agreement
[consent to settle?] with the defendants.

. . . .

35.

That the said settlement contract was financially more
advantageous for the defendants than the plaintiffs.

36.

That the plaintiffs are due the approximate sum of
$3,222.22 each, which is the amount they were cheated out
of due to the unconscionable and tortuous [sic] conduct
of the defendants; Which is the result reached when taken
in consideration of the other 900 claimants that had a
rightful share of the $2.9 million dollars [sic] which
was taken by the crafty actions of the defendants.

37.

That before the said August 24, 2001 letter [August 27, 2001 letter?] was sent unto the plaintiffs, defendants already had prior knowledge and had already negotiated for themselves the $2.9 million dollar [sic] payment in the said settlement agreement.

38.

That the averments of this complaint evidence that defendants combined together and intended to use the means employed, i.e. the said August 24, 2001 letter [August 27, 2001 letter?], which was the overt act or conduct (mailing the said letter) which evidence [sic] the defendants [sic] intent in furtherance or consummation of their conspiracy, to accomplish the unlawful said torts and that they acted in concert to achieve that end.

39.

That the averments of this complaint clearly evidence that not only did the defendants commit the torts as alleged in this complaint, but that they also conspired (i.e. a 'civil conspiracy') to commit those torts upon the plaintiffs.

(Williams Complaint 4-10.)

40.

That the defendants known [sic], or should have known that their actions in:

   a) Informing the plaintiffs that if they did not agree to settle their case, that the [sic] they would be unable to further represent them;
   b) Designating a $2.9 million dollar [sic] settlement payment just to the attorneys and not on behalf of the plaintiffs (which plaintiffs contendwas [sic] indeed part of the total recovery);
   c) Taking unfair advantage of the plaintiffs when they negotiated the settlement and giving no reasonable consideration unto plaintiffs; and
   d) Not advising or encouraging the plaintiffs to seek independent legal advice concerning the said settlement agreement which was clearly advantageous to the defendants;

-14-

were oppressive in character, conspiratorial in nature, constituted the torts of intimidation and bad faith contractual dealings; and that they were causing their clients (plaintiffs)to enter into an unconscionable contract or agreement that was not in their best interest.  The defendants had a duty unto the plaintiffs to procure for them the maximum or best settlement they, the plaintiffs and _not the defendants_, could possibly obtain for the contracted litigation and their conduct as alleged in this complaint constitutes negligence.  The defendants breached the duty owed unto the plaintiffs, and they are liable unto the plaintiffs to the full extent of the negligence they committed with regard to this complaint at bar.

(Amended Complaint 10.)  Based upon these allegations by the plaintiffs, the plaintiffs requested a judgment from the defendants "jointly and severally in the amount of $1,000,000.00 in any and all actual and compensatory damages; including, but not limited to emotional distress and hedonic damages, and $4,000,000.00 in punitive damages, resulting from their alleged actions averred in this complaint."[8]  (Williams Complaint 10-11.)

## VIII. ANALYSIS

Advised of the aforementioned legal authorities and upon a full consideration of the Policy terms juxtaposed with the factual assertions in the Williams complaints,[9] the Court concludes as

---

[8]  This same sentence in the final unnumbered paragraph of the amended complaint concludes "resulting from their alleged actions in tort and in negligence averred in this complaint."  (Amended Complaint 12.)

[9]  Pursuant to Mississippi law, only the factual allegations contained within the complaints are fair game for analyzing whether the defendant had a duty to defend.  Therefore, any argument advanced or evidence presented by the parties concerning matters

-15-

follows:

> ### A. The Acts or Omissions Which Allegedly
> ### Occurred Prior to November 26, 2001,
> ### Did Not Trigger Continental's Duty to Defend

The Policy terms obligate Continental "to pay on behalf of [Burton] all sums in excess of the deductible that [he] shall become legally obligated to pay as damages and claim expenses because of a claim that is both first made against [Burton] and reported in writing to [Continental] during the policy period by reason of an act or omission in the performance of legal services by [Burton] . . . provided that:  the act or omission occurred on or after 11/26/2001."  (Policy 1, Def.'s Mot. Summ. J. Ex. J 7.)

All of the factual allegations in the relevant portions of the complaints -- except for paragraphs 14 and 15 -- involve  acts or omissions that purportedly occurred prior to November 26, 2001; therefore, the Retroactive Exclusion Clause Endorsement, with its date of November 26, 2001, operates to preclude coverage for any claims predicated upon such alleged acts or omissions.  Given that "it is clear from the face of the state court complaints that the allegations therein are not covered," 1906 Co., 273 F.3d at 610, no duty to defend by Continental could have been activated based

---

not contained within said complaints (e.g., the date on which Burton actually received his fee from the representation of his former clients in the Primerica litigation, Pl.'s Mot. Summ. J. Ex. D) will not be considered by the Court.

upon the pre-November 26, 2001 allegations.[10]

### B. The Factual Allegations in Paragraphs 14 and 15 of the Underlying Complaints Triggered Continental's Duty to Defend

The only acts or omissions which are not clearly precluded from coverage by the Retroactive Exclusion Clause Endorsement because of the date of their occurrence are found in paragraphs 14 and 15 of the complaints. Specifically, the plaintiffs in the Williams action asserted that, on approximately November 7, 2002, they sent letters to three of the individual defendants (including Burton) asking for their case files and contract agreements, and that these three individuals, along with their respective firms, refused or otherwise failed to honor such requests. (Williams Complaint 4.) Because these acts or omissions supposedly occurred almost a year after the prior act exclusion date of November 26, 2001, they are potentially covered by the Policy.

The Court agrees with Continental that "[t]he question, then, is whether the matters referenced in Paragraphs 14 and 15 of the [] complaint constitute a claim within the meaning of the policy definition" (Def.'s Memo. Supp. Resp. Opp. Pl.'s Mot. Part. Summ.

---

[10]    The parties have not broached the issue of whether -- assuming that Continental did have a duty to defend Burton based upon other allegations contained in the underlying complaints that were ostensibly covered by the Policy -- Continental would then have been responsible for defending even these uncovered allegations. The Court emphasizes that it holds only that the allegations discussed in this section of the opinion did not trigger Continental's duty to defend.

J. 12); however, as discussed below, the Court disagrees with the defendant as to the answer to that query.  Specifically, the Court is of the opinion that the assertions found in paragraphs 14 and 15 and the ad damnum clause viewed in tandem may be reasonably described as "a demand received by the Insured for money or services arising out of an act or omission . . . in the rendering of or failure to render legal services." (Policy 5) (defining what constitutes a "claim" under the Policy).  Therefore, a "claim" ostensibly covered by the Policy exists for which Continental had a duty to defend.

Continental posits that "[n]o where in the amended complaint or the original complaint is the failure by Burton to turn over the former clients' case files and related documents in November 2002 alleged to be a tort or other cause of action against Burton." (Def.'s Memo. Supp. Resp. Opp. Pl.'s Mot. Part. Summ. J. 6.) Certainly in paragraphs 14 and 15, the word "tort" is not used, nor is any cause of action referenced.  On the other hand, paragraph 36 makes a general reference to "tort[i]ous conduct of the defendants"; paragraph 38 speaks of "unlawful said torts"; paragraph 39 says "defendants commit[ted] the torts as alleged in this complaint" and that "they also conspired (i.e. a 'civil conspiracy') to commit these torts upon the plaintiffs"; paragraph 40 speaks of "unlawful and tort[i]ous actions of the defendants . . . in committing the alleged torts delineated in this complaint

-18-

and conspiring to commit those said torts upon plaintiffs . . . ."
(Williams Complaint 9-10.)

In paragraph 40 of the amended complaint, the plaintiffs
contend that the defendants' "conduct as alleged in this complaint
constitutes negligence.  The defendants breached the duty owed unto
the plaintiffs, and they are liable unto the plaintiffs to the full
extent of the negligence they committed with regard to this
complaint at bar"; in paragraph 41, plaintiffs seek to "punish the
defendants for their actions in tort and negligence . . ."; and the
last sentence of the final unnumbered paragraph speaks of "actions
in tort and negligence averred in this complaint."  (Amended
Complaint 10-12.)

It is unclear whether these portions of the complaints that
refer to actions or conduct mentioned elsewhere in such pleadings
were sufficient to formally categorize the facts averred in
paragraphs 14 and 15 as the basis for "a tort or other cause of
action."  The Court need not decide this question, for under
Mississippi's "allegations of the complaint" rule, Sennett, 757 So.
2d at 212, factual allegations, not legal classifications, are the
focus when determining the existence of a duty to defend.  So.
Publ'g Co., 894 F.2d at 790; 1906 Co., 273 F.3d at 610; Ingalls
Shipbuilding, 410 F.3d at 225; Lexington Ins. Co., 2007 WL 2011288,
at *3; Nationwide Mut. Ins. Co. v. Ellzey, 1996 WL 33370645, at *2.

Continental urges that "no mention of the failure to provide

case files and related documents appears in the prayer of either
the complaint or amended complaint" (Rebut. Memo. Supp. Def.'s Mot.
Summ. J. 3), but it cites no authority which would require such an
unusual, rigid pairing of factual allegations with requests for
general damages.  The Court believes that the generic prayer by the
former clients for monetary damages "resulting from [Burton's]
alleged actions averred in this complaint[]" (Williams Complaint
11) -- which included the contents of paragraphs 14 and 15 -- was
sufficient to constitute a "demand . . . for money . . . arising
out of an act or omission . . . ." (Policy 5.)

Continental also points out that in the complaints "no demand
is made by the former clients that the court order the files
provided." (Def.'s Memo. Supp. Resp. Opp. Pl.'s Mot. Part. Summ. J.
12.)  The Court considers this fact inconsequential, given that a
demand for money was clearly made by the plaintiffs when they
sought judgment from Burton and the other defendants "jointly and
severally in the amount of $1,000,000.00 in any and all actual and
compensatory damages; including, but not limited to emotional
distress and hedonic damages, and $4,000,000.00 in punitive
damages, resulting from their alleged actions averred in this
complaint." (Williams Complaint 10-11.)  The Policy language is
phrased in the disjunctive and requires that a demand be for either
"money or services." (Policy 5) (emphasis added).  Thus the fact
that the plaintiffs in the Williams action did not request the

-20-

return of their files (arguably a service) is irrelevant given that there was a request for money.

Finally, Continental maintains that Burton was no longer engaged in the provision of "legal services" when he failed to relinquish the case files and other documents to Bud and Joyce Williams in November of 2002 because he "was not the former clients' lawyer and [] his representation of them had ended." (Def.'s Memo. Supp. Resp. Opp. Pl.'s Mot. Part. Summ. J. 12.)  The relevant portion of the Policy defines "legal services" as "those services performed by an Insured for others as a lawyer, arbitrator, mediator, title agent or as a notary public." (Policy 7.)   The Policy is thus unclear as to whether the term "legal services" encompasses the types of acts or omissions complained of in paragraphs 14 and 15.  Specifically, the Policy does not address whether responding to former clients' requests for case files and other documents is a "service[] performed . . . for others as a lawyer . . . ." (Policy 7.)  However, in such a situation, all doubts are to be resolved in favor of the insured and finding that a duty to defend was owed.  Ingalls Shipbuilding, 410 F.3d at 225–26; 1906 Co., 273 F.3d at 610; Boutwell, 175 F.2d at 600; Lexington Ins. Co., 2007 WL 2011288, at *3; B&B Oil Well Serv., Inc., 910 F. Supp. at 1175; Merch. Co., 794 F. Supp. at 616.

Moreover, Continental has not directed the Court to any authority which holds that, upon the discontinuance of

representation, an attorney ceases to have any persisting duties to a former client arising out of the attorney-client relationship which might reasonably fall under the label of "legal services." Accordingly, the Court is of the opinion that it is <u>at least plausible</u> that the purported failure of Burton to tender the case files and associated materials to the plaintiffs was a failure to render a "service[] performed by [Burton] for others as a lawyer . . . ."[11]  (Policy 7.)

_____

[11]    It is worth noting that at least one other court has so opined on strikingly similar facts. In <u>Home Insurance Co. v. St. Paul Fire & Marine Insurance Co.</u>, 229 F.3d 56, 58 (1st Cir. 2000), one of a law firm's two professional liability insurers sought a declaration that the other insurer should share the costs incurred in defending and indemnifying the law firm in a malpractice suit. In the malpractice action, the law firm was sued by former clients for acts committed several years prior. <u>Id.</u>  About one year into the litigation, the former clients amended their complaint and alleged that the law firm defendant had breached sundry ethical duties while defending itself in the lawsuit, including refusing to return case files of the former client plaintiffs. <u>Id.</u>  The two insurers, both having issued malpractice policies to the law firm, disagreed about which one bore responsibility for covering the allegations of ethical misconduct by the former clients. <u>Id.</u> at 59.

        One insurer denied responsibility because it believed the law firm was no longer representing the former clients at the time of the ethical violations, and thus there was no coverage obligation because the acts were not committed in the "performance of legal services." <u>Id.</u>  The United States Court of Appeals for the First Circuit, applying Maine law, disagreed and noted that that insurer had a duty to defend the law firm as to the ethical charges, "think[ing] it at least arguable . . . that a lawyer's honoring of his continuing ethical duties, arising as they do out of the attorney-client relationship, is itself a 'legal service' the lawyer provides to his clients, and that the [ethical violations] could, under some legal theory or factual showing, each be proven a 'negligent act, error, or omission' committed in the performance of such service." <u>Id.</u> at 65 (citations omitted).

        At the time this case was decided, Maine law on the triggering of an insurer's duty to defend was essentially the same

## IX. CONCLUSION

In summation, the issue presented is answered affirmatively, and the Court finds that pursuant to the terms of the Policy, there were facts asserted in the Williams complaints sufficient to give rise to Continental's duty to defend Burton against such allegations.  Specifically, because the factual averments in paragraphs 14 and 15 concerning Burton's supposed failure to return case files to his former clients, when read in conjunction with the ad damnum paragraph, conceivably constitute a "demand received by the Insured for money or services arising out of an act or omission . . . in the rendering of or failure to render legal services[]" (Policy 5), a "claim" was asserted against Burton which fell within the coverage ambit of the Policy.  Therefore, Continental had "the right and duty to defend in [Burton's] name and on [Burton's] behalf a claim covered by th[e] Policy even if any of the allegations of the claim [we]re groundless, false or fraudulent." (Policy 2.)  The defendant failed to discharge this duty.

As a consequence, partial summary judgment is appropriate for Burton regarding Continental's duty to defend based upon these particular factual assertions.  It follows, then, that summary

_____

as Mississippi law, insofar as "[t]he scope of a duty to defend is determined by 'comparing the provisions of the insurance contract with the allegations in the underlying complaint[,]'" Id. (quoting Burns v. Middlesex Ins. Co., 558 A.2d 701, 702 (Me. 1989)), and "any ambiguity in policy language is to be construed in favor of the insured." Id. (citing Union Mut. Fire Ins. Co. v. Inhabitants of Topsham, 441 A.2d 1012, 1015 (Me. 1982)).

judgment is inappropriate as to Continental on the same basis.

**IT IS HEREBY ORDERED** that the plaintiff's Motion for Partial Summary Judgment [**docket entry no. 51**] is **GRANTED** and that the defendant's Motion for Summary Judgment **[docket entry no. 49]** is **DENIED**.

**SO ORDERED,** this the  4th  day of   September  , 2007.


                                    s/ David Bramlette
                                  UNITED STATES DISTRICT JUDGE